## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOHN C.,[1]

      Plaintiff,

                                  **Case No. 2:20-cv-12186**

    v.                                **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      Defendant.

### OPINION AND ORDER

      This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff John C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

### I.    PROCEDURAL HISTORY

      On April 1, 2016, Plaintiff filed his application for benefits, alleging that he has been disabled since October 1,[3] 2015. R. 139, 153, 227–31. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

[3] Plaintiff later amended his alleged onset date to November 1, 2015, R. 63, 119–20.

upon reconsideration. R. 157–61, 163–65. Plaintiff sought a *de novo* hearing before an

administrative law judge ("ALJ"). R. 166–69. ALJ Scott Tirrell held a hearing on October 30,

2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R.

82–129. In a decision dated February 13, 2019, the ALJ concluded that Plaintiff was not disabled

within the meaning of the Social Security Act from November 1, 2015, Plaintiff's amended

alleged onset date, through the date of that decision. R. 63–72. That decision became the final

decision of the Commissioner of Social Security when the Appeals Council declined review on

July 7, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1.

On October 9, 2020, Plaintiff consented to disposition of the matter by a United States

Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil

Procedure. ECF No. 2.[4] On October 13, 2020, the case was reassigned to the undersigned. ECF

No. 3. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's

---

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

3

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at \*4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of

Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see

K.K.*, 2018 WL 1509091, at \*4.  The ALJ's decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.

at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the

record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at \*4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or

simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, a Court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.      Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for

determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §

404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d

632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 36 years old on November 1, 2015, his amended alleged disability onset date. R. 71. He met the insured status requirements of the Social Security Act through December 31, 2021. R. 65. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between his amended alleged disability onset date, and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff's post-laminectomy syndrome, thoracic and lumbar degenerative disc disease, chronic pain syndrome, headaches, and obesity were severe impairments. *Id*.  The ALJ also found that Plaintiff's diagnosed blastocystis hominis, Lyme disease, and gastroesophageal reflux disease were not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 66.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 67–71. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a carpenter, electrician apprentice, salesperson, and radiation monitor. R. 70–71.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as an order clerk, a spotter, and a callout operator—existed in the national economy and could be performed by Plaintiff. R. 71–72. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 1, 2015, his amended alleged disability onset date, through the date of the decision. R.

7

72.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 25; *Plaintiff's Reply Brief*, ECF No. 35. The Acting Commissioner takes the position that the decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 30.

## IV.   DISCUSSION

### A.   RFC and Opinion Evidence

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly weigh multiple medical opinions and/or medical findings and because the RFC found by the ALJ is inconsistent with sedentary work. *Plaintiff's Brief*, ECF No. 25, pp. 15–31; *Plaintiff's Reply Brief*, ECF No. 35, pp. 1–7. Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554

(3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record," but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work, as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant is limited to occasional climbing of ramps and stairs, but never climbing ladders, ropes, or scaffolds; occasional balancing; occasional stooping, kneeling, crouching, and crawling; and never working at unprotected heights or working with exposed machinery. The claimant could occasionally push and pull with the dominant upper extremity, with weight limited as with lifting and carrying; could occasionally reach overhead with the dominant upper extremity; could frequently reach in all other directions with the dominant upper extremity; and could frequently use the hands bilaterally for handling, fingering, and feeling. Further, the claimant would require 1-2 minutes of standing at the workstation after 30 minutes of sitting, and would require 1-2 minutes of sitting at the work station after 30 minutes of standing or walking, during which periods the claimant would be off task in addition to usual breaks. Lastly, the claimant can understand, remember and carry out simple instructions; can perform simple, routine tasks; can make simple work-related decisions; and is able to adapt to changes in a routine work environment.

R. 67. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, progress notes following Plaintiff's laminectomy at L5-S1 in November 2015, which showed good alignment with stable flexion and extension; imaging from 2015 and 2016 that showed advanced facet arthrosis at L4-L5, moderate to significant bilateral foraminal stenosis impinging the exiting L5 nerve roots, moderate disc bulge at L4-L5 with moderate to significant bilateral foraminal stenosis impinging on the L4 nerve roots, and mild disc bulging at C3-4 and

C4-5 of the cervical spine; December 2015 EMGs that were negative for radiculopathy but positive for peripheral poly-motorsensory neuropathy of the lower extremities, demyelinating type; and a January 2016 EMG from a different facility that showed minimally decreased velocity in the left tibial nerve, a finding that could be found in those with radiculopathy, as well as denervation in the lumbar muscles on the right, believed likely due to scar tissue rather than to lumbar radiculopathy, and no evidence of demyelinating peripheral neuropathy; January 2016 and February 2016 physical examination notes that indicated numbness in the right arm and right leg and paresthesia, a limping gait favoring the right side, positive straight leg raising on the right leg, decreased sensation on the right side of his face, skull, right arm and leg, and occasional headaches; February 2016 and July 2016 notes that revealed normal gait, normal posture, 5/5 muscle strength in all muscles, normal sensation in upper and lower extremities, intact deep tendon reflexes bilaterally, and normal sensory examinations; noted from a 2016 office visit that indicated that, despite Plaintiff's reports of difficulty with overhead reaching, MRIs of the cervical spine were unremarkable, and EMGs were negative for cervical or lumbar radiculopathy and/or signs of peripheral neuropathy or demyelinating neuropathy; progress notes from December 2016, following a procedure to remove the spinal cord stimulator due to lack of substantial benefit, which reflected that an MRI revealed normal-appearing disc spaces at Ll-2, L2-3, L3-4, and L4-5 despite positive discogram at L4-5; notes from 2017 that reflected general office visits for only medication monitoring; notes from July 2017 that showed complaints of back pain radiating to the abdomen, limited range of motion of the lumbar spine, examination findings reflecting 5/5 in the lower extremities, negative Babinski, no clonus of the ankles bilaterally, intact sensation in lower legs bilaterally, negative straight-leg raising, and intact heel/toe/tandem gait; notes in 2018 that reflect visits for renewal of medical marijuana and

physical examination findings of full range of motion in the head and neck, no bruit auscultated on the right or left, non-tender, normal musculoskeletal system, and no complaints of back pain, joint pain, or muscle pain; complaints of neck pain in January 2018 following a motor vehicle accident, but an assessment of fair function; the characterization that Plaintiff is obese; and Plaintiff's activities of daily living, including driving approximately 70 miles or less per week, grocery shopping (using the cart for support while walking), and helping with household chores albeit slowly and with pain. R. 68–69. The ALJ went on to explain his RFC findings as follows:

> In sum, the above residual functional capacity assessment is supported by the overall medical evidence showing consistent management with medication and medical marijuana, as well as the claimant's reported activities of daily living, which are consistent with the ability to perform work at the sedentary level. Adequate accommodations have been made in limiting the claimant to simple work based on his complaints of pain affecting his concentration, and options to stand based on his reports of pain relief with intermittent standing. However, great restrictions are not warranted based on the overall medical evidence.

R. 70. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Celento v. Comm'r Soc. Sec.*, 613 F. App'x 205, 206–07 (3d Cir. 2015) (noting that daily activities such as, *inter alia*, driving "require at least some . . . mental concentration"); *Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *cf. D.C. v. Comm'r of Soc. Sec.*, No. CV 20-2484, 2021 WL 1851830, at *6 (D.N.J. May 10, 2021) ("Her ability to drive, prepare meals, manage funds, shop, and take a cruise also contradicted her claims that she had difficulty concentrating, remembering information, and engaging in social activities.").

Plaintiff, however, challenges the ALJ's consideration of opinions and/or findings of multiple medical sources. *Plaintiff's Brief*, ECF No. 25, pp. 15–31; *Plaintiff's Reply Brief*, ECF No. 35, pp. 1–7. An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court

11

"to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett*, 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[5] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec*., 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec*., 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is

---

[5] As previously noted, Plaintiff's claim was filed on April 1, 2016. For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the

13

wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

The Court will address Plaintiff's challenges in turn.

### 1.    Charles Daknis, M.D.

On March 27, 2012, Plaintiff visited his treating physician, Charles Daknis, M.D., following the replacement of a spinal cord stimulator by Simon Salerno, M.D. R. 346. Dr. Daknis noted that Plaintiff "had to have the surgical lead replaced x1 secondary to chest wall stimulation after placement of the first lead" and presented "with basic programming in place." *Id*. Dr. Daknis further noted that Plaintiff's wounds were well-healed, but that Plaintiff "is having significant difficulties with spasm in his extremities, spasm across the back and tenderness with palpation." *Id*. Dr. Daknis noted that narcotic analgesics were effective and that Skelaxin would be added for muscle spasm and that formal reprogramming would be scheduled over the following week for a spinal cord coverage with back and bilateral lower extremity symptoms. *Id*. Dr. Daknis went on to state as follows:

> *Given the unusual postoperative circumstances with this patient, I believe it is in his best interest for full healing to remain out of work for the next 6 months*. Reevaluation at that point to note healing will be performed and may be extended to at least one year. I believe that he will require medications in the form of narcotic and non-narcotic analgesics, antispasmodics on a paroxysmal basis over the course of this time. These have been rendered within a reasonable medical certainty. The patient will be seen by me in 4 weeks' time for further medication management and reevaluation of stimulator.

*Id*. ("Dr. Daknis' 2012 opinion") (emphasis added).

On November 3, 2015, Plaintiff presented to Dr. Daknis for complaints of low back and right lower extremity pain. R. 355. Dr. Daknis noted that he had last seen Plaintiff in August 2012 and that Plaintiff had undergone spinal fusion in 2010 and spinal cord stimulation

14

implantation in 2011. *Id.* On physical examination, Dr. Daknis noted that, *inter alia*, Plaintiff had no joint swelling, muscle disorders, deformities, or joint pain. R. 356. Examination of Plaintiff's lumbar spine revealed an antalgic gait with difficulty heel walking on the right side. *Id.* However, other findings included no tenderness or paravertebral spasm, intact sensation in both lower extremities, no muscle atrophy, palpable pulses bilaterally, and an ability to toe walk without difficulty. *Id.* Plaintiff's right hip flexor was 2/5 and his left hip flexor was 5/5; his right quadricep was 2/5 and his left quadricep was 5/5; his right extensor hallucis longus ("EHL") was 2/5 and his left EHL was 5/5; his right ankle dorsiflexor was 2/5 and his left ankle dorsiflexor was 5/5; Plaintiff's plantar flexors were 5/5 bilaterally; straight leg raise ("SLR") from both the supine and sitting positions were 90 degrees bilaterally and his SLR on the contralateral side was negative bilaterally. R. 357. Dr. Daknis diagnosed lumbar radiculopathy. *Id.* Dr. Daknis went on to state as follows:

> I'm concerned about the possibility of juxtafusional stenosis or breakdown and possible migration of spinal cord stim electrodes.

> I discussed radiographic evaluation including thoracic spine films, lumbar spine films with standing flexion extension films as well as a CT scan of the lumbar spine.

> *Patient, with this amount of weakness, I believe should be out of work at this point until formal diagnosis can be made.*

> Patient wishes to avoid opioid analgesics. I discussed with him that given the chronicity of the symptoms his weakness may not be restorable.

> I questioned him why he didn't present sooner to the office with the symptoms[;] he stated that he didn't want to treat and he didn't want to be out of work.

*Id.* ("Dr. Daknis' 2015 opinion") (emphasis added).

In crafting the RFC, the ALJ considered Dr. Daknis' 2012 and 2015 opinions as follows:

> Treating Charles Daknis, M.D. opined on March 27, 2012 that the claimant should remain out of work for six (6) months for full recovery in light of his "unusual postoperative circumstances"; and on November 13, 2015 based on the claimant's

report of weakness in the legs (Exhibits 10F; 13F, p. 5). The 2012 opinion is given little weight as it is outside the relevant period, and the 2015 opinion is given little weight as it is unclear if Dr. Daknis is familiar with the Social Security Administration's disability evaluation program or the evidence of record. Moreover, the doctor's statement indicating the claimant is "unable to work," is not a medical opinion, but rather an administrative finding dispositive of a case, which are issues reserved to the Commissioner, and as such are not entitled to any special significant weight (20 CFR 404.1527(e)(l)(3)). However, some weight is given to the medical diagnoses and assessment of the claimant's condition provided in the 2015 visitation notes by Dr. Daknis as he is a treating source with a longitudinal history with the claimant.

R. 69.

Plaintiff challenges this consideration, arguing that the ALJ erred when he failed to properly consider Dr. Daknis' familiarity with Plaintiff's record and when he discounted the opinion on the ground that it was not clear that this physician was familiar with the Social Security program and when the ALJ concluded that Dr. Daknis' opinion was one reserved to the Commissioner instead of a medical restriction. *Plaintiff's Brief*, ECF No. 25, pp. 15–21; *Plaintiff's Reply Brief*, ECF No. 35, pp. 1–6. Plaintiff also complains that the ALJ failed to specify which of Dr. Daknis' findings, test results, or medical opinions were credited or discredited. *Plaintiff's Brief*, ECF No. 25, p. 16; *Plaintiff's Reply Brief*, ECF No. 35, p. 4.

Plaintiff's arguments are not well taken. As a preliminary matter, the record reflects that the ALJ recognized Dr. Daknis' familiarity with the record. R. 65 (citing, *inter alia*, Dr. Daknis' treatment notes at Exhibit 13F/2–3), 66 (citing, *inter alia*, Dr. Daknis' treatment notes at Exhibit 22F), 68 (citing, *inter alia*, Dr. Daknis' treatment notes at Exhibits 8F, 13F/2, 22F), 69–70 (weighing the opinion of Dr. Daknis, noting that he was a "treating source with a longitudinal history with the claimant[,]" and citing, *inter alia*, Dr. Daknis' treatment notes at Exhibits 10F, 13F/5). The ALJ also properly considered whether Dr. Daknis was familiar with the Social Security Administration's disability evaluation program. R. 69–70; *see also* 20 C.F.R. §

16

404.1527(c)(6) (explaining that, when considering how much weight to give to a medical

opinion, the ALJ may consider, *inter alia*, "the amount of understanding our disability programs

and their evidentiary requirements that a medical source has"); *Fuehrer v. Saul*, No. CV 16-

5248, 2019 WL 5550634, at *5 (E.D. Pa. Oct. 28, 2019) (stating that "the extent of a treating

physician's 'understanding of [the Social Security Administration's] disability programs and

their evidentiary requirements' is a permissible consideration in weighing opinion evidence")

(citations omitted); *Russo v. Comm'r of Soc. Sec.*, No. CIV.A. 13-06918, 2014 WL 6991987, at

*9 (D.N.J. Dec. 10, 2014) ("The ALJ also appropriately commented that Dr. Abenante 'has

simply imparted extreme limitations on the claimant's ability for work despite not having any

familiar[ity] with Social Security Regulations and Policies.'") (citations omitted).

  In any event, despite Plaintiff's arguments to the contrary, the ALJ properly found that

Dr. Daknis' opinion that Plaintiff was unable to work was not entitled to any special

significance, R. 69, because that is an issue reserved to the Commissioner. *See* 20 C.F.R. §

404.1527(d)(1), (3); *see also Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020)

("Whether or not Louis can perform occupational duties is a legal determination reserved for the

Commissioner.") (citing 20 C.F.R. § 404.1527(d)); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x

493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's

opinion as to Zonak's ability to work because the opinion related to the ultimate issue of

disability—an issue reserved exclusively to the Commissioner."); *Dixon v. Comm'r of Soc. Sec.*,

183 F. App'x 248, 251 (3d Cir. 2006) ("However, opinions on disability are not medical

opinions and are not given any special significance.") (citing 20 C.F.R. § 404.1527(e)(1) & (3));

*Dennis-Orshak v. Berryhill*, No. 3:18-CV-15987, 2020 WL 4364330, at *5 (D.N.J. July 30,

2020) ("[T]he ALJ properly gave no weight to Dr. Cohen's opinion that Dennis-Orshak 'could

never return to full time work' because that is a determination reserved to the Commissioner.")
(citations omitted).

In continuing to challenge the ALJ's consideration of Dr. Daknis' 2015 opinion, Plaintiff complains that the ALJ failed to specify what "findings, test results, and medical opinions as to functional limitations of Dr. Daknis were credited or discredited" when assigning "some weight" to Dr. Daknis' 2015 opinion. *Plaintiff's Reply Brief*, ECF No. 35, p. 4; *see also Plaintiff's Brief*, ECF No. 25, pp. 15–16. Even if the Court accepted—for present purposes only—that the ALJ erred in failing to specify which medical diagnoses and assessments offered in Dr. Daknis' 2015 office visit notes were accepted or rejected, any such error in that regard is harmless because Dr. Daknis did not opine as to any functional limitations in those notes. R. 355–57. Although Dr. Daknis' November 3, 2015 examination revealed, *inter alia*, an antalgic gait with difficulty heel walking on the right side, limited flexion and extension of the lumbar spine, and reduced strength in Plaintiff's right hip flexor, right quadricep, right EHL, and right ankle dorsiflexor, and a diagnosis of lumbar radiculopathy, Dr. Daknis' examination of the lumbar spine also revealed no tenderness or paravertebral spasm, intact sensation in both lower extremities, no muscle atrophy, palpable pulses bilaterally, the ability to toe walk without difficulty, and 5/5 strength in the left hip flexor, left quadricep, left EHL, left ankle dorsiflexor, and bilateral plantar flexors; SLR from the supine and sitting positions were 90 degrees bilaterally and SLR from the contralateral side bilaterally was negative. R. 356–57. Notably, in the RFC determination, the ALJ accounted for Plaintiff's lumbar pain and limited flexion and extension as well as for Plaintiff's weakness in

his right extremities by limiting Plaintiff to sedentary work with additional postural limitations

and a sit/stand option. R. 67.[6]

     In short, based on this record, the ALJ appropriately considered Dr. Daknis' 2012 and

2015 opinions, and any failure to specify which findings he accepted and rejected from that latter

opinion was, at most, harmless error.

> **2.    Evidence from Simon Salerno, M.D., Paul Vessa, M.D., Paul Roberts, M.D., Anthony Depaolo, M.D., Mingi Choi, M.D., "Dr."[7] Rick Klatt, and Ian Wendel, D.O.**

     The heading of Plaintiff's next argument contends that substantial evidence does not

support the ALJ's reasons for "not crediting the medical opinions" of Simon Salerno, M.D., Paul

Vessa, M.D., Paul Roberts, M.D., Anthony Depaolo, M.D., Mingi Choi, M.D., Rick Klatt, and

Ian Wendel, D.O. *Plaintiff's Brief*, ECF No. 25, pp. 21–25. However, the text and citations under

that heading are generally difficult to follow and it is not clear that they support the assertion in

the heading. For example, Plaintiff writes only the following two sentences regarding Dr.

Depaola:

> Dr. De Paola [sic] reported that [Plaintiff] was diagnosed in April 2017-July 2017 with thoracic spondylosis secondary to herniated thoracic disc with myelopathy (Tr. 497, 523-526). He sent [Plaintiff] for a surgical opinion to Dr. Wendel who confirmed the diagnosis of thoracic herniated disc with myelopathy on June 15, 2017, and found ongoing severe back pain, decreased range of motion, leg weakness, muscle pain and muscle weakness (Tr. 534-540).

*Id*. at 23. Plaintiff's first citation—"Tr. 497, 523-526"—does not stand for the proposition cited:

The first cited page is simply a document signed by Plaintiff that lists patient, guarantor, and

insurance information, *see* R. 497, and the remaining cited pages appear to be from an

---

[6] To the extent that Plaintiff challenges these RFC limitations, the Court addresses those arguments later in this Opinion and Order.
[7] Plaintiff refers to this provider as "Dr[]." Rick Klatt, *Plaintiff's Brief*, ECF No. 25, p. 21, but this provider's credentials are not clear from the administrative record.

examination conducted not by Dr. Depaolo, but by another provider, Frank Casella, D.O., R. 523–26.

Regardless, Plaintiff simply points to a diagnosis, referral for a surgical opinion, and examination findings without any accompanying argument. *Plaintiff's Brief*, ECF No. 25, p. 23. The rest of Plaintiff's text under this heading is similarly flawed, providing merely a list of medical evidence—with no opined functional limitations—unaccompanied by a discussion of the significance of the evidence or how the ALJ committed reversible error in connection with such evidence. *See id.* at 23–26; *see also Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) ("A diagnosis alone . . . does not demonstrate disability.") (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). The Court will not guess at Plaintiff's meaning or otherwise construct his arguments for him. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments.").

However, to the extent that Plaintiff intends to suggest that the ALJ failed to consider certain laboratory or clinical findings, the Acting Commissioner properly notes that, although the ALJ did not specifically identify some of these physicians by name, the ALJ nevertheless "cited to the relevant exhibits and page numbers that contained their records[.]" *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 30, p. 14; *see also id.* at 12–14 (detailing the ALJ's consideration of such evidence). Moreover, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record. Even in *Fargnoli*, the court conceded that it did not expect the ALJ to make reference to *every* piece of relevant information." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) (citations omitted) (emphasis in the original). In any event, the Court will address Plaintiff's arguments regarding specific flaws in the RFC limitations, arguments that invoke, *inter alia*, evidence from some of these providers. Finally, as to Rick Klatt, after referring to this provider in the heading of his brief, Plaintiff never again mentions this provider under that heading. *See Plaintiff's Brief*, ECF No. 25, pp. 21–25.

Under these circumstances, Plaintiff has not persuaded the Court that the ALJ's purported failure to "credit" the opinions of Simon Salerno, M.D., Paul Vessa, M.D., Paul Roberts, M.D., Anthony Depaolo, M.D., Mingi Choi, M.D., "Dr." Rick Klatt, and Ian Wendel, D.O., requires remand.

### 3.       Whether the RFC is inconsistent with sedentary work

Plaintiff also argues that that the ALJ's RFC determination is "very confusing" and "possibly inconsistent with the criteria of 'sedentary work' since it involved 30 minutes of sitting and then 30 minutes of standing and up to 8-16 minutes of switching positions off-station in an 8-hour workday[.]" *Plaintiff's Brief*, ECF No. 25, p. 26. Plaintiff further contends that the ALJ posed a hypothetical to the vocational expert—"the claimant would require 1-2 minutes of

standing at the work-station after 30 minutes of standing or walking, during which periods the claimant would be off-task in addition to usual breaks"—that apparently contemplated 4 hours of sitting and 4 hours of standing. *Id*. (citing R. 124–25). Plaintiff goes to explain that the regulations define sedentary work as requiring no more than "occasional" walking and standing, which is very little to up to one third of an eight-hour workday, *i.e.*, generally totaling no more than two hours out of an eight-hour workday. *Id*. at 26–27 (citing 20 C.F.R. § 404.1567(a), SSR 83-10).

Plaintiff's arguments are not well taken. A fair reading of the RFC reflects that the ALJ determined that Plaintiff could perform sedentary work, but needed, *inter alia*, 1 to 2 minutes of standing at the workstation after 30 minutes of sitting and needed 1 to 2 minutes of sitting at the workstation after 30 minutes of standing or walking, and that Plaintiff would be off task during those 1 to 2-minute periods, which would be in addition to usual breaks. R. 67. In other words, the ALJ concluded that Plaintiff could perform the 6 hours of sitting and 2 hours of standing/walking generally required for sedentary work except that Plaintiff simply needed to stand for a period of 1 to 2 minutes after sitting for 30 minutes and needed to sit for a period of 1 to 2 minutes after standing/walking for 30 minutes. *Id*. As discussed in more detail below, the vocational expert identified three sedentary occupations that a hypothetical claimant with these limitations could perform, reflecting that changing positions and being off-task during this change did not preclude the performance of sedentary work. R. 125–26.

### 4.   Sitting/standing limitation

Plaintiff insists that the "medical findings, test results and medical opinions from Dr. Daknis and Drs. Salemo, Vessa, Roberts, Casella, Choi, Klatt, Casella and Wendel[,]" support an

inability to sit for six to eight hours a day. *Plaintiff's Reply Brief*, ECF No. 35, pp. 1–6; [8] *see also*

*Plaintiff's Brief*, ECF No. 25, p. 27. Plaintiff specifically points to the following evidence:

- Dr. Daknis' discographic analysis at L3-L4-L5 performed on March 14, 2016, and examination findings that included, *inter alia*, herniated L4-L5 disc, decreased flexors, chronic pain syndrome, abnormal motor testing such as numbness and tingling, *Plaintiff's Brief*, ECF No. 25, p. 27 (citing R. 356, 416–19); *Plaintiff's Reply Brief*, ECF No. 35, pp. 1–2 (citing *Plaintiff's Brief*, pp. 6–8)

- Dr. Roberts' conclusion that his findings were not consistent with neuropathy but with chronic pain syndrome, and his decision to order more testing, Gabapentin, and possibly injections, *Plaintiff's Brief*, ECF No. 25, p. 27 (citing R. 400, Exhibit 17F/19)

- Plaintiff's diagnosis of multilevel thoracic disc protrusions causing either moderate mass effect on the spinal cord or the cord and the canal with stenosis and lumbar spondylosis and post-laminectomy syndrome, *Plaintiff's Brief*, ECF No. 25, p. 27 (citing R. 606–07, Exhibit 33F/112–13)

- Dr. Roberts "interpreted the findings as consistent with lumbar radiculopathy and/or scar tissue with chronic pain syndrome[,]" *Plaintiff's Reply Brief*, ECF No. 35, p. 2 (citing *Plaintiff's Brief*, pp. 9–10 (citing R. 379, 395–96, 398 400, Exhibits 16F/1, 17F/14–15, 17, 19))

- "Dr[.] Vessa confirmed findings of bilateral leg weakness, and sensory loss and diagnosed multi-level protrusions, spinal cord stenosis and postlaminectomy syndrome/failed back syndrome[,]" *Plaintiff's Reply Brief*, ECF No. 35, p. 2 (citing *Plaintiff's Brief*, p. 22[–23] (citing R. 360, 474–75, Exhibits 13F/8, 30F/1–2))

- "Drs. Wendel and Klatt's findings were consistent and confirmed low back pain, lower extremity weakness and loss of range of motion with antalgic gait[,]" *Plaintiff's Reply*

---

[8] Plaintiff's argument contains inaccurate record citations that make it unnecessarily difficult for the Court to follow and assess his arguments. *Cf. Claxton*, 766 F.3d at 307. For example, Plaintiff fails to identify any evidence from Dr. Choi in his reply brief despite this representation in that brief. *See generally id.* In addition, Plaintiff represents that "Dr. Vessa found low back pain, numbness and tingling in the lower extremity[,]" but Plaintiff cites to a record from Dr. Roberts that does not reflect these findings. *See Plaintiff's Brief*, ECF No. 25, p. 27 (citing "*Id.*[,]" *i.e.*, R. 400). Plaintiff also represents that "Dr. Wendel, a physiatrist confirmed the diagnosis of thoracic herniated disc with myelopathy on June 15, 2017, and found ongoing severe back pain, decreased range of motion, leg weakness, muscle pain and muscle weakness[,]" but Plaintiff cited to records from Dr. Depaola dated April 5, 2017, and June 15, 2017, R. 534, 539–40; and to records from Dr. Cassella dated April 27, 2017, R. 535–38. *Plaintiff's Brief*, ECF No. 25, p. 27 (citing R. 534-540). Dr. Depaola's records do not include a diagnosis of herniation of intervertebral disc of the thoracic spine with myelopathy, R. 534, 539–40.

23

*Brief*, ECF No. 35, p. 2 (citing *Plaintiff's Brief*, pp. 11–12 (citing R. 385–86, 529, 534–40, Exhibits 17F/4–5, 33F/35, 40–46))[9]

Plaintiff's arguments are not well taken. As previously discussed, the ALJ properly considered Dr. Daknis' findings and opinions. In addition and as noted above, the ALJ considered many of the records and/or diagnoses or findings cited by Plaintiff. R. 65 (finding, *inter alia*, that post-laminectomy syndrome is a severe impairment), 68 (considering, *inter alia*, physical examinations in 2016 that revealed "numbness in the right arm and right leg and paresthesia, limping gait favoring right side, positive straight leg raising on the right leg, decreased sensation on the right side of his face, skull, right arm and leg, and occasional headaches[,]" imaging from 2015 and 2016 that showed "L4-L5 advanced facet arthrosis; moderate to significant bilateral foraminal stenosis impinging the exiting L5 nerve roots, moderate disc bulge at L4-L5 with moderate to significant bilateral foraminal stenosis impinging on the L4 nerve roots; and mild disc bulging at C3-4 and C4-5 of the cervical spine[,]" and imaging from 2016 and 2017 that showed "mild marginal spurring of the thoracic spine, multilevel disc protrusion, mild canal stenosis at T-8-9, moderate central canal stenosis at T7-8, and multilevel facet arthrosis[,]" and citing, *inter alia*, Exhibits17F, 22F, 33F), 69 (citing, *inter alia*, Exhibits 13F, 17F, 30F, 33F). Even if the ALJ did not expressly discuss all the evidence on which Plaintiff now relies, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record. Even in *Fargnoli*, the court conceded that it did not expect the ALJ to make reference to *every* piece of relevant information." *Hur,* 94 F. App'x at 133 (citing *Fargnoli,* 247 F.3d at 38) (emphasis in the original). Moreover, the ALJ also

---

[9] In support of his assertion regarding Dr. Wendel's findings, Plaintiff cites to a record from Dr. Depaola—not Dr. Wendel—that contains those findings. *See Plaintiff's Brief*, p. 11 (citing R. 385–86, Exhibit 17F/4, which contains notes from an examination by Dr. Depaola on February 8, 2016).

considered other record evidence detailed above when crafting the RFC determination. R. 67–70. In other words, the ALJ appropriately considered the contrary evidence in the record and concluded that substantial evidence did not support additional or different RFC limitations. *Id.*; *see also Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Plaintiff's argument, therefore, boils down to nothing more than a disagreement with the ALJ's decision, which the Court has already explained is supported by substantial evidence. *See Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); *Markoch v. Comm'r of Soc. Sec.*, No. 1:20-CV-00417, 2020 WL 7586953, at *4-5 (D.N.J. Dec. 22, 2020) ("With regard to their impact on the RFC determination even when those impairments are considered not severe, Plaintiff does not articulate what additional restrictions should have been implemented. It is Plaintiff's burden to establish the severity of her impairments, and Plaintiff's challenge to the ALJ's consideration of her non-severe impairments amounts to mere disagreement with his analysis rather than showing any substantive error."). Notably, despite highlighting diagnoses and medical findings, Plaintiff does not point to any opinion that identifies any specific functional limitations regarding sitting. *See generally Plaintiff's Brief*, ECF No. 25; *Plaintiff's Reply Brief*, ECF No. 35; *see also Foley*, 349 F. App'x at 808; *Phillips*, 91 F. App'x at 780. In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also*

*Chandler,* 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."). Accordingly, Plaintiff's challenge to the ALJ's finding of an ability to sit/stand for the length of time set forth in the RFC will not serve as a basis to remand this action.

### 5.    Bending limitation

In further challenging the RFC, Plaintiff appears to argue that the ALJ should have found that Plaintiff was unable to bend at the waist. *Plaintiff's Brief*, ECF No. 25, p. 28 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 35, p. 10 (citations omitted). In advancing this argument, Plaintiff relies on his hearing testimony regarding such a limitation; Dr. Daknis' finding that Plaintiff had limited lumbar flexion and extension; and Dr. Salerno's recommendation that Plaintiff avoid bending. *Id.*

Plaintiff's arguments are not well taken. As discussed later in this Opinion and Order, the ALJ properly discounted Plaintiff's subjective statements. For the reasons previously explained, the ALJ also appropriately considered evidence from Dr. Daknis. Notably, Plaintiff does not point to an opinion from Dr. Daknis identifying a specific limitation in bending. The ALJ also expressly considered Dr. Salerno's recommendation that Plaintiff "limit bending[,]" and gave that recommendation "[s]ome weight" because the limitation, while appropriate following a medical procedure at that time, fell "outside the relevant period at issue." R. 69. Notably, the ALJ limited Plaintiff to occasional stooping and crouching. R. 67. Plaintiff, who bears the burden at step four, has not persuaded this Court that the ALJ erred in this limitation or in failing to include a more restricted limitation in this regard. *Cf. Chandler*, 667 F.3d at 362 ("[T]he ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision.").

### 6.      Handling/fingering/reaching limitations

Plaintiff goes on to complain that the ALJ did not adequately consider Plaintiff's decreased dexterity and limitations in his ability to finger, handle, and reach, pointing to imaging results and examination findings, including numbness and decreased sensation in Plaintiff's right arm, as well as Plaintiff's testimony. *Plaintiff's Brief*, ECF No. 25, pp. 28–29 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 35, pp. 6–7 (citations omitted). Plaintiff's argument is not well taken. As a preliminary matter, the ALJ limited Plaintiff to sedentary work with the additional limitations of, *inter alia*, occasionally pushing and pulling with the  dominant upper extremity, with weight limited as with lifting and carrying; occasional reaching overhead with the dominant upper extremity; frequently reaching in all other directions with the dominant upper extremity; and frequently using the hands bilaterally for handling, fingering, and feeling. R. 67. While Plaintiff insists that his cited medical findings "regarding the right upper extremity would cause grater [sic] limitations consistent with Mr. C[.]'s testimony and would reasonably erode occasionally the ability to reach, hand or finger with the right dominate extremity[,]" his contention in this regard boils down to simply a disagreement with the ALJ—who has the duty to craft the RFC—and whose decision the Court has already explained is supported by substantial evidence. *See Chandler*, 667 F.3d at 361; *Perkins*, 79 F. App'x at 514–15; *Markoch*, 2020 WL 7586953, at *4–5. The Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose his−or this Court's−own factual determination. *See Chandler*, 667 F.3d at 359; *Zirnsak*, 777 F.3d at 611.

### 7.      Other factors

Finally, Plaintiff apparently complains that the ALJ did not adequately consider other factors such as Plaintiff's pain, daily activities, effects of treatment, and lay testimony, in crafting

27

the RFC. *Plaintiff's Brief*, ECF No. 25, pp. 29–31. This Court disagrees. The ALJ expressly considered these factors when determining the RFC, R. 67–70, and Plaintiff has not persuaded this Court that his challenge is nothing more than a disagreement with the ALJ's decision.[10] To the extent that Plaintiff may argue that the ALJ's finding of chronic pain syndrome at step two as a severe impairment requires certain restrictions at step four or further findings at step five, *Plaintiff's Brief*, ECF No. 25, p. 31, "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019).

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of the opinions and/or findings of Drs. Daknis, Salerno, Vessa, Roberts, Depaolo, Choi, and Wendel, as well as Rick Klatt.

### B.    Subjective Statements

Plaintiff also challenges the ALJ's consideration of his subjective complaints, contending that the ALJ mischaracterized Plaintiff's testimony about his daily activities and that Plaintiff's daily activities do not equate to "sedentary" or "sustained work activity." *Plaintiff's Brief*, ECF No. 25, pp. 31–35; *Plaintiff's Reply Brief*, ECF No. 35, pp. 7–8. Plaintiff arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. §

---

[10] The Court addresses Plaintiff's specific challenge to the ALJ's consideration of Plaintiff's wife's lay testimony later in this Opinion and Order.

416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective

complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20

C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a

claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (Oct. 25, 2017). First, the ALJ

"must consider whether there is an underlying medically determinable physical or mental

impairment(s) that could reasonably be expected to produce an individual's symptoms, such as

pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably

be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the

intensity and persistence of those symptoms to determine the extent to which the symptoms limit

an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181

F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or

symptom and the extent to which it affects the ability to work] obviously requires the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to

which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this

evaluation, an ALJ must consider the objective medical evidence as well as other evidence

relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following

factors to consider: daily activities; the location, duration, frequency, and intensity of pain or

other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side

effects of any medication you take or have taken to alleviate pain or other symptoms; treatment,

other than medication, currently received or have received for relief of pain or other symptoms;

any measures currently used or have used to relieve pain or other symptoms; and other factors

concerning your functional limitations and restrictions due to pain or other symptoms). Finally,

an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v.*

29

*Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 2Izzo80, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 67–68, 70. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 68. As previously discussed, the ALJ detailed years of medical evidence and record testimony to support his findings. R. 67–70. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Miller*, 719 F. App'x at 134; *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity. . . and was permitted to consider them to evaluate the credibility of [the claimant's] subjective complaints of pain and other symptoms.") (citations omitted); *Izzo*, 186 F. App'x at 286; *Van Horn*, 717 F.2d at 873.

Plaintiff specifically contends that the ALJ misrepresented Plaintiff's hearing testimony regarding his ability to drive when discounting his subjective statements. *Plaintiff's Brief*, ECF No. 25, pp. 32–33; *Plaintiff's Reply Brief*, ECF No. 35, pp. 7–8. This Court disagrees. The ALJ considered Plaintiff's activities as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent based on his activities of daily living and the overall medical records. *The claimant testified that he still drives approximately 70 miles or less per week*, drives his son to bus stops, drives locally for food shopping, *goes shopping for light groceries using cart for support while walking*, and tries to help with household chores, *albeit slower and with pain* (Testimony).

R. 68 (emphasis added). During the administrative hearing, Plaintiff testified regarding his

weekly driving as follows:

> A I drive my son to the bus stop, which is -- I could walk there, if I wanted to. It's that close. My older two, they get themselves on the bus.
>
> Q Okay. Any other errands or things you take care of for the kids during the day?
>
> A To be truthful, I drive about 70 miles a week.
>
> Q Okay.
>
> A If not less. I don't do much of anything, to be truthfully honest with you. Because, anytime I am out or anything, if I am in pain, I need to be able to know that I can lay down or sit down.
>
> And, being in a car, or being in a public place, I don't have that ability.

R. 122. Plaintiff therefore testified that he drives "about 70 miles a week[,]" "[*i*]*f not less*[,]" *id.*

(emphasis added), while the ALJ stated that Plaintiff testified that he drove "approximately 70

miles *or less* per week[.]" R. 68 (emphasis added). Plaintiff has not persuaded the Court that the

ALJ misrepresented Plaintiff's testimony about his driving.

Plaintiff also suggests that his activities are more limited than those described by the

ALJ, pointing to his own testimony that he leaned on a cart in a grocery store and tried to help

with household chores, but more slowly and with pain. *Plaintiff's Brief*, ECF No. 25, p. 33

(citing R. 68). However, as Plaintiff concedes, the ALJ specifically noted these qualifications to

Plaintiff's daily activities when considering Plaintiff's subjective statements. R. 68. Although

Plaintiff insists that these activities are not equivalent to full-time sedentary work, these findings

31

were but some of the things—along with examination findings—that the ALJ considered when

assessing Plaintiff's subjective statements. R. 67–70.

Finally, Plaintiff challenges the ALJ's consideration that Plaintiff's conditions were

managed with medication and medical marijuana. *Plaintiff's Brief*, ECF No. 25, p. 33; *Plaintiff's*

*Reply Brief*, ECF No. 35, p. 8. However, as the Acting Commissioner, points out, *Defendant's*

*Brief Pursuant to Local Rule 9.1*, ECF No. 30, pp. 19–20, the regulations authorize an ALJ to

consider the type of medication that a claimant takes to alleviate pain or other symptoms. 20

C.F.R. § 404.1529(c)(3)(iv). In the present case, the ALJ expressly noted that Plaintiff was

prescribed marijuana, along with other medications, and appeared for medication monitoring

visits. R. 68–70. The Court is not persuaded that remand is warranted on this basis. *Cf. Jimenez*

*v. Colvin*, No. 15-3762, 2016 WL 2742864, at *4 (D.N.J. May 11, 2016) (noting that "the

treatment was conservative: medication, including trigger point injections, and physical

therapy").

For all these reasons, the Court concludes that the ALJ sufficiently explained his

reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are

supported by substantial evidence in the record and are therefore entitled to this Court's

deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306

F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony

regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v.*

*Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319,

322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where

"the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited

Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment

32

of Plaintiff's subjective complaints will not serve as a basis for remand of this action. *Id.*

C.      **Plaintiff's Wife's Third-Party Statements**

Plaintiff argues that the ALJ erred when he assigned "some weight" to Plaintiff's wife's statements but then failed to incorporate those statements in the RFC determination. *Plaintiff's Brief*, ECF No. 25, pp. 34–36; *Plaintiff's Reply Brief*, ECF No. 35, pp. 8–9. Plaintiff's argument is not well taken.

When crafting the RFC, the ALJ expressly considered a function report completed by Plaintiff's wife follows:

> The record additionally contains a report from Blaine C[.], wife of the claimant, which is generally supportive of and consistent with the claimant's allegations (Exhibit 10E). The report reflects the claimant's ability to perform occasional laundry, prepare simple meals, drive, and difficulty with standing, lifting, and walking due to pain (Exhibit 10E). Although this reporter is not an acceptable medical source, the report must be considered per Social Security Ruling 06-03p to show the severity of the individual's impairments and how they affect the individual's ability to function. Because it is consistent with the claimant's testimony, the report is given some weight.

R. 70. As previously discussed, the ALJ crafted an RFC for a limited range of sedentary work. R. 67. Although Plaintiff complains that the ALJ did not consider additional details from Plaintiff's wife's report, including her statement that Plaintiff rested 85% of the time, performed light housework only 15% of the time, had difficulty putting on socks and pants, bending over and performing other exertional activities and had problems with concentration, he has not explained how the RFC for a limited range of sedentary work actually found by the ALJ fails to incorporate the limitations referred to in Plaintiff's wife's statements. *See generally Plaintiff's Brief*, ECF No. 25, pp. 34–36; *Plaintiff's Reply Brief*, ECF No. 35, pp. 8–9; *see also* R. 67 (reflecting RFC for sedentary work with multiple limitations, including, *inter alia*, the limitation to understand, remember, and carry out simple instructions, perform simple, routine tasks, and make simple

33

work-related decisions), 70 (explaining that he limited Plaintiff to simple work based on his complaints of pain affecting his concentration).

To the extent that Plaintiff complains that his wife pointed to social limitations that the ALJ did not include in the RFC even after the ALJ accorded "some weight" to his wife's opinion, the Court is not persuaded that this issue requires remand. As set forth above, the ALJ specifically noted that Plaintiff's wife's statements regarding Plaintiff's *physical* limitations were consistent with Plaintiff's testimony. R. 70. Although the ALJ did not expressly discuss her opined social limitation, *see* R. 298 (reflecting Plaintiff's wife's statement that Plaintiff "is occasionally anti-social due to our financial stress and his pain. He has pulled away from social interactions"), the ALJ implicitly rejected that limitation when assigning "substantial weight" to the opinion of Steven Weitz, Ph.D., who performed two mandatory pre-surgical psychological evaluations, and who concluded that Plaintiff had no mental limitations. R. 70. Moreover, the Court notes that, in contrast to his wife's statement, Plaintiff reported that he spends time with family every day, sees friends 1-2 times perform month, attends sporting events, has no problems getting along with family, friends, neighbors, or others, and gets along "[f]ine" with authority figures. R. 276, 278. Based on this record, the Court cannot say that the ALJ erred in this regard. *Cf. Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 122 (3d Cir. 2020) ("The ALJ discounted [the plaintiff's] mother's reports because they were inconsistent with the previously discussed objective medical evidence and medical opinions. This reason was sufficient by itself to support the ALJ's decision.").

## D.    Step Five

Finally, Plaintiff challenges the ALJ's step five determination, arguing that the Commissioner failed to meet her burden of showing that there is other work in the national

economy that Plaintiff could perform. *Plaintiff's Brief*, ECF No. 25, pp. 36–39; *Plaintiff's Reply Brief*, ECF No. 35, pp. 9–11. This Court disagrees.

At step five, an ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Unlike in the first four steps of the sequential evaluation, the Commissioner bears the burden of proof at step five. *Hess,* 931 F.3d at 201; *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford,* 399 F.3d at 551). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id*. at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny*, 745 F.2d at 218. "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the

record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id*. (cleaned up). A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

In the case presently before the Court, the hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 67, 125–26. The vocational expert responded that the jobs of order clerk, spotter, and call-out operator would be appropriate for such an individual. R. 126. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218. Plaintiff complains that the hypothetical question does not address all of his alleged impairments. *Plaintiff's Brief*, ECF No. 25, pp. 36–38; *Plaintiff's Reply Brief*, ECF No. 35, pp. 9–11. This criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

Plaintiff also contends that the ALJ did not ask the vocational expert to resolve "numerous conflicts between the Plaintiff's limitations and the D.O.T.[11] Job Requirements." *Plaintiff's Brief*, ECF No. 25, p. 38; *see also id*. at 39. This argument—which does not identify the claimed "conflicts"—is unavailing as both untimely and without merit. "As a general rule, occupational evidence provided by a [vocational expert] should be consistent with the occupational evidence presented in the DOT." *Zirnsak*, 777 F.3d at 617 (citing SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). Before relying on vocational expert testimony, an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] and information in the Dictionary of Occupational Titles[.]" SSR 00-4p, 2000 WL 1898704, at *1. "Specifically, an ALJ is required to (1) ask, on the record, whether the [vocational expert's] testimony is consistent with the DOT, (2) 'elicit a reasonable explanation' where an inconsistency does appear, and (3) explain in its decision 'how the conflict was resolved.'" *Zirnsak*, 777 F.3d at 617 (quoting *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002)). While an "ALJ's failure to comply with these requirements *may* warrant remand in a particular case[,]" "this Circuit has emphasized that the presence of inconsistencies does not mandate remand, so long as 'substantial evidence exists in other portions of the record that can form an appropriate basis to support the result.'" *Id*. (citations omitted) (emphasis added); *see also Jackson v. Barnhart*, 120 F. App'x 904, 905–06 (3d Cir. 2005) ("[E]ven if it was error for the ALJ to fail to solicit testimony about potential conflicts between this portion of the VE's testimony and the DOT, the error was harmless. Where substantial evidence supports the ALJ's

---

[11] The Dictionary of Occupational Titles or "DOT" is a "publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy," and which ALJs generally consult to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

opinion and where the failure to solicit the testimony contemplated in SSR 00-4p is harmless, this court will not reverse the ALJ's decision.") (citations omitted).

In the present case, the ALJ complied with this requirement. Before questioning the vocational expert, the ALJ specifically explained to the vocational expert that if that expert were to give an opinion that conflicted with the DOT, the expert must acknowledge the conflict and explain the basis for the opinion, and the vocational expert testified that he understood this requirement. R. 124. During the ALJ's examination, the vocational expert did not identify any conflicts with the DOT. R. 125–128. Following his questioning, the ALJ asked the vocational expert whether that expert's testimony was consistent with the DOT and the vocational expert responded in the affirmative. R. 127–28. Accordingly, the ALJ expressly complied with the requirements in SSR 00-4p.

In short, the Court finds that the Commissioner carried the burden at step five of the sequential evaluation and concludes that substantial evidence supports the ALJ's determination in this regard.

## V.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  July 25, 2023                                        _____*s/Norah McCann King*_____
                                                                        NORAH McCANN KING
                                                                        UNITED STATES MAGISTRATE JUDGE